UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL OROZCO,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL TERRY, et al.,<br><br>    Defendants. | 1:18-cv-01680-LJO-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM**<br>**(ECF No. 9.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

**I.    BACKGROUND**

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on December 28, 2016, in the Sacramento Division of the United States District Court for the Eastern District of California. (ECF No. 1.) On December 27, 2017, the court screened the Complaint and issued an order dismissing the Complaint for failure to state a claim, with leave to amend. (ECF No. 5.) On January 31, 2018, Plaintiff filed the First Amended Complaint. (ECF No. 9.) On December 11, 2018, the case was transferred to this court. (ECF No. 10.)

Plaintiff's First Amended Complaint is now before the court for screening. 28 U.S.C. § 1915A.

**II.    SCREENING REQUIREMENT**

1

1  The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

**III. PLAINTIFF'S ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**

Plaintiff is presently incarcerated at Valley State Prison in Chowchilla, California. At the time Plaintiff filed the original Complaint he was incarcerated at North Kern State Prison (NKSP) in Delano, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR). In the First Amended Complaint, Plaintiff names as defendants Michael Terry (CCI at Correctional Training Facility (CTF) in Soledad, California), King (CCII at CTF), John Doe #1 (Classification Staff Representative in Sacramento, California), John Doe #2 (CCI at Modified Community Correctional Facility (MCCF) in McFarland,

California), John Doe #3 (Appeal Analyst at NKSP), John Doe #4 (CCI at NKSP), and J. Lopez (Appeal Analyst at Avenal State Prison (ASP) in Avenal, California) (collectively, "Defendants").

Following is a summary of Plaintiff's allegations in the First Amended Complaint.

### (1) **Plaintiff was Transferred Despite His Objections**

Plaintiff claims that he was deprived of his rights to properly practice Orthodox Judaism when he was transferred from CTF to MCCF, then to ASP, then to NKSP, and his requests at each prison to be transferred back to CTF were denied.

Defendants **Michael Terry and King** -- placed Plaintiff for transfer from CTF to MCCF after Plaintiff stated that he could not go to MCCF because MCCF did not have a Rabbi or a proper Kosher diet.

Defendant **John Doe #1** -- endorsed Plaintiff's transfer from CTF to MCCF after being informed that Plaintiff refused to be transferred there because he would not be able to freely exercise his religion at MCCF. John Doe #1 denied Plaintiff's request to be transferred back to CTF three times, from different institutions.

Defendant **John Doe #2** -- denied Plaintiff's request to be transferred from MCCF back to CTF. Plaintiff's needs were not met at MCCF. Defendant John Doe #2 told Plaintiff that if he did not stop "filing appeals that red flag him and find another way to get out," Plaintiff would be in trouble. First Amended Compl. (FAC) at 8:15-16. John Doe #2 also scheduled an appointment for Plaintiff at NKSP with Mental Health Staff, and called transportation to pick Plaintiff up the next day, which was one of the days of Sukkos, a Jewish holiday. Plaintiff told John Doe #2 that he could not travel because he would not be able to shake/wave the "Lulav," which would violate Plaintiff's religious requirements. FAC at 8:22-24. John Doe #2 told Plaintiff that if he did not go voluntarily, "he would go to the housing unit and use his toys, pointing to his pepper spray." FAC at 8:26-27.

Defendant **John Doe #3** -- denied Plaintiff's request to be transferred from NKSP back to CTF, even though he was advised that Plaintiff's religious needs were not being met.

Defendant **John Doe #4** -- failed to process Plaintiff's appeal against CCI John Doe #2

3

at MCCF as a staff complaint. John Doe #4 also cancelled Plaintiff's prison appeal concerning Plaintiff's inability to exercise his religious rights.

Defendant **J. Lopez** -- denied Plaintiff's First Amendment right to appeal his need for a Minyan.[1]

### (2) Plaintiff was Unable to Practice His Religion

Plaintiff, a practicing Orthodox Jew, was unable to properly practice his religion while incarcerated at MCCF, NKSP, and ASP because the required conditions were not met. Orthodox standards require a group of ten Jewish men (called a Minyan) together in one location. Without a Minyan Plaintiff cannot properly pray, have a study group, have a Torah scroll present, say Kaddish (a very special prayer), properly celebrate the High Holy Days, or request volunteers from the Aleph Institute to conduct High Holy Day services. Without a Minyan, Plaintiff cannot use the "Yeshivah in Prison Program" provided by the Aleph Institute at no cost for those inmates who are confirmed Jewish. FAC at 5:21-23. Even if there are more than ten Jewish inmates at one prison, it is no good if they are in different yards and cannot mingle together due to their classification status.

The CDCR forbids an employed Rabbi to deny services to inmates who are not Jewish. This hinders Jews from learning since the Rabbi cannot teach Jewish law and other holy texts that a Jew is forbidden to teach to a non-Jew.

Plaintiff was not placed in a yard with nine other Jewish inmates who were legitimately Jewish, as confirmed by the Aleph Institute. Orthodox Judaism is not a faith in which anyone can just proclaim to be Jewish. People are Jewish if they are either born to a Jewish mother and can prove it, or had a proper Jewish conversion under Orthodox standards (which would be impossible in prison) and can prove it. Orthodox Jews and Rabbis have the right to deny a non-Jewish inmate services that are forbidden. However, Orthodox Rabbis are willing to provide services to non-Jewish inmates separate from Jewish services if CDCR gives them space and time, not taking away from Jewish inmates.

---

[1] Plaintiff defines a Minyan as a group of 10 or more Jewish men. (FAC at 5:11-12.)

Plaintiff cannot properly exercise his religion in a prison with non-orthodox Rabbis who do not follow the strict letter of Orthodox Jewish law and cannot properly teach, supervise Kosher procedures, or conduct a prayer service.

Every day, Plaintiff was unable to fulfill commandments that could hasten the coming of the Mosshiach (Messiah). Plaintiff was unable to recite the Kaddish Prayer, have a Torah scroll present and read from it, catch up to the study of a Jew his age, or save money on his academic studies upon release. The loss of study will cost Plaintiff approximately $382.00 for all of the years he will have to spend in the Yeshivah (Jewish Academy).

Plaintiff suffered emotional distress knowing that he was unable to fulfill his obligations or contribute to the fast coming of the Moshiach. There is no going back in time, and each day that passes by the Jewish people and Plaintiff suffer greatly.

As relief, Plaintiff requests that CDCR respect the religious needs of an inmate by transferring him to the place he requests to go if his religious needs are not met at that institution; recognize that a Jewish Service can only be for inmates recognized as Jewish by the Aleph Institute at the discretion of an Orthodox Rabbi if he chooses to hold a separate service for non-Jews; hire only Orthodox Rabbis through the Aleph Institute, Union of Orthodox Rabbis, etc.; and to always keep a Minyan in a yard, never less than ten Jews. Plaintiff also requests monetary damages for loss of the opportunity to be educated, for emotional distress, for court expenses, for time lost in litigation, and for other lost opportunities.

## IV. PLAINTIFF'S CLAIMS

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor,

490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### B. Injunctive Relief

Besides monetary damages, Plaintiff requests injunctive relief. Injunctive relief is not available to Plaintiff in this case. Plaintiff's allegations arose from events and conditions occurring at the California Training Facility in Soledad, the Modified Community Correctional Facility in McFarland, North Kern State Prison in Delano, and Avenal State Prison in Avenal, during the time that Plaintiff was incarcerated at those facilities. Plaintiff is now incarcerated at Valley State Prison in Chowchilla. When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and with no reasonable expectation of returning, his claim is moot. Pride v. Correa, 719 F.3d 1130, 1138 (9th Cir.

2013). Plaintiff has been transferred from all of the facilities whose conditions he challenges in the First Amended Complaint, and he has not alluded to a reasonable expectation of returning to any of them. Therefore, injunctive relief is not available to Plaintiff in this case.

    **C.**    **Due Process**

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); Meachum v. Fano, 427 U.S. 215, 224-27, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin, 515 U.S. at 481-84. In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and

(2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84.

### 1. **Transfers to Other Prisons**

Prisoners have no liberty interest in avoiding being transferred to another prison. See Olim, 461 U.S. at 245; Meachum, 427 U.S. at 225-27; United States v. Brown, 59 F.3d 102, 105 (9th Cir. 1995) (per curiam). Inmates have "no justifiable expectation" that they will be incarcerated in any particular prison and transferring an inmate to another prison does not infringe a protected liberty interest. Olim, 461 U.S. at 245; Vitek v. Jones, 445 U.S. 480, 489, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." Meachum, 427 U.S. at 225; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California prisoner did not have liberty interest in residing at a level III prison as opposed to a level IV prison); Germain v. Janam, No. 2:18-cv-3041-DB-P, 2019 WL 79011, at *9 (E.D. Cal. Jan. 2, 2019) ("Plaintiff is also not entitled to a transfer to any particular prison or prison program."); Springfield v. Craig, No. 2:17-cv-2144-DB-P, 2018 WL 5980138, at *3 (E.D. Cal. Nov. 14, 2018) ("Plaintiff's allegations that he was held in a more restrictive institution does not implicate a liberty interest entitling him to due process protections. An inmate has no right to a particular prison.").

Here, plaintiff's allegation -- that his rights to stay at, or be transferred to a particular prison that offers more opportunity to practice his religion -- fails to state a claim for violation of due process. As discussed above, prisoners have no liberty interest in avoiding transfers to another prison, even out of state. As Plaintiff has no liberty interest in avoiding such a transfer, he cannot state a claim for deprivation of due process based on transfers.

///

///

### 2. **Inmate Appeals Process**

Plaintiff's allegations against defendants J. Lopez and John Doe #4 pertain to their review and handling of Plaintiff's inmate appeals. "[I]nmates lack a separate constitutional

entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495. Therefore, Plaintiff's allegations that defendants J. Lopez and John Doe #4 failed to properly process Plaintiff's appeals, fails to state a cognizable claim.

### D. First Amendment Free Exercise Clause

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1997)). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'" Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

///

Courts apply a four-part test to balance the inmate's free exercise right against the state's legitimate penological interests to determine if a regulation is reasonable and constitutional. Turner, 482 U.S. at 89.

> First, is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it? Second, are there alternative means of exercising the right that remain open to prison inmates? Third, what impact will accommodation of the asserted constitutional right . . . have on guards and other inmates, and on the allocation of prison resources generally? And, fourth, are ready alternatives for furthering the governmental interest available?

Beard v. Banks, 548 U.S. 521, 529 (2006) (internal citations and quotations omitted).

In considering the first Turner factor, the court must "(1) determine whether the regulation is legitimate and neutral, and (2) assess whether there is a rational relationship between the governmental objective and the regulation." Ashker v. California Dept. of Corrections, 350 F.3d 917, 922 (9th Cir. 2003).

> In determining whether there is a rational relationship between the purported objective and the regulation, the level of scrutiny applied to the judgment of prison officials depends on the circumstances in each case. If an inmate presents sufficient evidence to refute a common-sense connection between a legitimate objective and a prison regulation, . . . the state must present enough counter-evidence to show that the connection is not so remote as to render the policy arbitrary or irrational." If, however, the inmate does not present evidence sufficient to refute a common-sense connection between the regulation and the government objective, prison officials need not prove that the banned material actually caused problems in the past or that the materials are likely to cause problems in the future. The only question is whether prison administrators reasonably could have thought the regulation would advance legitimate penological interests.

Id. at 922-23 (internal quotations and citations omitted).

Here, Plaintiff has sufficiently asserted that he sincerely adheres to a religion, Orthodox Judaism, and that he was prevented from engaging in conduct which he sincerely believes is consistent with his faith. However, Plaintiff has not shown that any named defendant acted in a way that caused Plaintiff's free exercise rights to be violated.

Section 1983 requires that there be an actual connection or link between the actions of defendants and the constitutional deprivations alleged to have been suffered by Plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson, 588 F.2d at 743. In order to state a claim for relief under § 1983, Plaintiff

must satisfy the "linkage requirement"— meaning that he must link each defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's rights. Here, Plaintiff has not done so.

Therefore, the court finds that Plaintiff fails to state a claim for violation of his rights under the First Amendment Free Exercise Clause.

**E.      RLUIPA**

The court must screen for RLUIPA if such a claim is plausible in the Complaint. Alvarez v. Hill, 518 F.3d 1152 (9th Cir. 2008).

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise[2] of a person residing in or confined to an institution . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1)    is in furtherance of a compelling government interest; and
>
> (2)    is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.

"RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005). "RLUIPA disallows prison policies that impose 'a substantial burden on . . . religious exercise' unless the burden 'furthers "a compelling governmental interest," and does so by "the least restrictive means."'" Alvarez, 518 F.3d at 1152 (quoting id. at 994 quoting 42 U.S.C. § 2000cc–1(a)). A "substantial burden" is one that imposes a significantly great restriction or onus on religious exercise. San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034–35 (9th Cir. 2004). The Supreme Court has found a substantial burden "where the state denies an important

---

[2] "Congress defined 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Holt v. Hobbs, 135 S.Ct. 853, 860, 190 L.Ed.2d 747 (2015). (quoting § 2000cc-5(7)(A)). In fact, RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." Cutter v. Wilkinson, 544 U.S. 709, 725 n.13, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (but RLIUPA does not preclude inquiry into sincerity of a prisoner's professed religiosity").

11

benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." Warsoldier, 418 F.3d at 995 (quoting Thomas v. Review Bd. of the Ind. Employment Sec. Div., 450 U.S. 707, 717–18 (1981)). In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation at issue "substantially burdens" that religious exercise. Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir. 2008). "Courts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Hartmann, 707 F.3d at 1124-25 (citing Cutter v. Wilkinson, 544 U.S. 709, 723, 125 S.Ct. 2325 (2003) (internal quotation marks omitted)).

Money damages are not available under RLUIPA against the state or state officials sued in their official capacities, Sossamon v. Texas, 563 U.S. 277, 279, 131 S.Ct. 1651, 1655 (2011), and RLUIPA does not contemplate liability of government employees in their individual capacity. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may proceed only for declaratory or injunctive relief against defendants acting within their official capacities.

Here, Plaintiff fails to state a RLUIPA claim in the First Amended Complaint because the only relief available under RLUIPA is injunctive relief, and as discussed above, Plaintiff's request for injunctive relief in this case is moot because Plaintiff is now incarcerated at Valley State Prison. Moreover, the Ninth Circuit has decided that a RLUIPA claim may not be maintained against prison officials in their individual capacities. Woody, 753 F.3d at 904. Therefore, Plaintiff cannot state a RLUIPA claim in this case.

///

///

### F. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th

Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin, 515 U.S. at 482). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

To the extent that Plaintiff seeks to bring a retaliation claim against Defendant John Doe #2, he fails to do so. Plaintiff's allegations against Defendant John Doe #2 do not state a claim for retaliation. John Doe #2's remark to Plaintiff that if he did not stop "filing appeals that red flag him and find another way to get out," Plaintiff would be in trouble, does not show the required retaliatory intent. The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendant's conduct. Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Plaintiff has not met this burden. Furthermore, warning Plaintiff that he would be in trouble does not rise to the level of an adverse action against Plaintiff in a retaliation claim. Plaintiff also alleges that John Doe #2 told Plaintiff that if he did not go voluntarily, "he would go to the housing unit and use his toys, pointing to his pepper spray." FAC at 8:26-27. Mere verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139

(9th Cir. 1987); accord Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996). Even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Thus, Plaintiff fails to state a claim against defendant John Doe #2 for threatening him by pointing to his pepper spray.

In light of the foregoing, the court finds that Plaintiff fails to state a claim for retaliation against defendant John Doe #2 or any other Defendant.

## V. CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff fails to state any claims in this case upon which relief may be granted under § 1983. The court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court. Plaintiff has now filed two complaints without stating any claims upon which relief may be granted under § 1983. The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. This case be DISMISSED, with prejudice, for failure to state a claim upon which relief may be granted under § 1983;
2. This dismissal be subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g); and
3. The Clerk be ordered to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394

(9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 10, 2019**                    **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE